# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | CASE NO. 2:24-CR-107 |
| vs. | : |
| | JUDGE SARGUS |
| CARLOS SERRANO-RESTREPO, | : |
| Defendant. | : |

## MOTION TO DISMISS INDICTMENT

Pursuant to Fed. R. Crim. P. 12(b)(1), Carlos Serrano-Restrepo, through undersigned counsel, hereby moves this Court to dismiss the indictment returned in this case because 18 U.S.C. § 922(g)(5)(A), as applied to him, violates the Second Amendment to the United States Constitution.

Respectfully submitted,

/s/ Steven S. Nolder
Steven S. Nolder (0037795)
65 East State Street, Suite 200
Columbus, Ohio 43215
(614) 221-9790
snolder9@gmail.com
Attorney for Carlos Serrano-Restrepo

## MEMORANDUM

On July 18, 2024, the federal grand jury returned a one-count indictment charging that:

> [O]n or about January 10, 2024, in the Southern District of Ohio, the defendant, CARLOS SERRANO-RESTERPO, knowing that he was an alien illegally and unlawfully in the United States, did knowingly possess a firearm listed in Attachment A, said firearm having been shipped and transported in interstate or foreign commerce.
> In violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8).

1

(R. #16, Indictment).

I.     **Statement of Facts.**

On January 20, 1978, Carlos Serrano-Restrepo was born in Medellin-Antioquia-Colombia. (Exhibit A).  On April 17, 2008, Carlos illegally entered the United States, and that date is considered, for immigration purposes, his "last arrival" into this country. (Exhibit B). Three months later, on July 23, 2008, Carlos acquired an ITIN from the IRS. (Exhibit C).  An ITIN is an "Individual Taxpayer Identification Number" that is a tax processing number only available for certain nonresidents and resident aliens who are unable to acquire a Social Security Number.  Attached hereto as Exhibit D is Carlos' 2021 Form 1040 that was filed using his ITIN.

In 2017, Carlos became 50/50 partners with Leslie Aguilar and formed Valda Services Corporation. It is a New York based company specializing in remediating fire and flooding damage done to homes.  Many of the assignments are made through Valda's relationship with Serv Pro and the work is performed throughout the United States. In 2021, Carlos bought Aguilar's interest and became the 100% owner of Valda Services Corporation. (Exhibit E). Attached hereto as Exhibit F is Valda's 2022 corporate tax return and Exhibit G is Valda's 2023 corporate return.

For many years, Carlos was a resident of Arizona but on May 27, 2022, he bought a house located at 1800 Lynnbrook Court, Orient, OH 43146 resulting in him relocating to Central Ohio.  The deed and mortgage for this property are in Carlos' name, and this is also the location where a federal search warrant was executed on January 10, 2024, and the firearms and ammunition chronicled in the forfeiture allegation were found. (Exhibit H).

On July 8, 2022, Carlos filed a Form I-589 Application of Asylum and Withholding Removal. (Exhibit B). Carlos was notified by the Department of Homeland Security, in a Notice of Action Form I-797C dated August 29, 2022, that he could remain in the United States until his "asylum application is decided." (Exhibit I). To date, it's still pending.

On September 7, 2022, the Department of Homeland Security generated a Notice of Action Form I-797C notifying Carlos of his obligation to appear at USCIS in Phoenix on September 21, 2022 for "Biometrics Submission" and he was also instructed to bring identification. (Exhibit J). Carlos appeared at this appointment and submitted his biometrics. (Exhibit J).

On January 23, 2023, the Department of Homeland Security generated a Notice of Action Form I-797C confirming receipt of Carlos' application for permission to work. (Exhibit K). The following day, another Notice of Action Form I-797C was generated documenting Carlos's "1765—Application For Employment Authorization" as well as encouraging Carlos to establish a USCIS Account. (Exhibit L).

On February 1, 2023, the Department of Homeland Security generated another Notice of Action Form I-797C informing Carlos that he had an obligation to file his application for asylum within one year of his "last arrival" into the United States. (Exhibit B). However, Carlos' asylum application was considered "prohibited," because he last arrived in the United States on April 17, 2008, his application for asylum was filed on July 8, 2022, and he failed to justify his untimely filing. (Exhibit B). Carlos was apprised that he was entitled to either meet with an immigration officer to justify his untimely filing or he could waive this meeting. (Exhibit M).

3

On March 21, 2023, Carlos was notified by the Department of Homeland Security, through a Notice of Action Form I-797, that his application for employment authorization was approved and was valid until March 20, 2025. (Exhibit N). Less than a month later, on April 18, 2023, the Social Security Administration informed Carlos that his application for a Social Security Number was approved and a card would be mailed within two weeks. (Exhibits O). Exhibit P is Carlos' 2022 Form 1040 and Exhibit Q is Carlos' 2023 Form 1040, both of which were filed using his Social Security Number issued on April 18, 2023.

On May 5, 2023, Carlos applied for an Ohio Driver's License. (Exhibit R). Carlos presented his work authorization card to the Ohio Bureau of Motor Vehicles and was issued a driver's license that expires on March 20, 2025, the same day his work authorization expires. (Exhibit R).

As noted, on January 10, 2024, the guns and ammunition found in the forfeiture notice of Carlos' indictment were located at his residence, some of which he kept for self-defense. Group Exhibit S illustrates how Carlos displayed his collection at his home.

**II.     Legal Argument.**

Fed. R. Crim. P. 12(b)(1) allows a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." At this stage, "the indictment must be tested by its sufficiency to charge an offense," *United States v. Sampson*, 371 U.S. 75, 78 (1962), and "the allegations of the indictment must be taken as true," *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952). Carlos Serrano-Restrepo moves to dismiss count one because, as applied to him, § 922(g)(5)(A) violates the Second Amendment as interpreted by *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1

(2022) and *United States v. Rahimi*, 602 U.S.---, 144 S. Ct. 1889 (June 21, 2024).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Over the past 16 years, the Supreme Court has frequently given contours to the Second Amendment. In *District of Columbia v. Heller,* 554 U.S. 570, 616 (2008), the Court held that the Second Amendment protects the right to possess a handgun in the home for self-defense. In M*cDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the Court ruled that the Second Amendment applies to the states through the Fourteenth Amendment.

Two years ago, in *Bruen*, the Court held that the Second Amendment protects the possession of a handgun outside the home for self-defense. *Bruen*, 597 U.S. at 8. Finally, a month ago in *Rahimi*, the Court applied the *Bruen* framework to reject a facial Second Amendment challenge to 18 U.S.C. § 922(g)(8), which prohibits firearm possession by persons subject to domestic violence restraining orders. *Rahimi*, 144 S. Ct. at 1889. Because Rahimi brought a facial challenge to the statute, the Court emphasized that "to prevail, the Government need only demonstrate that [the challenged law] is constitutional in some of its applications." *Id*.

*Bruen* substantially clarified the standard to evaluate the constitutionality of a statute regulating conduct implicated by the Second Amendment. A court must first determine whether the "Second Amendment's plain text covers [the] individual's conduct[.]" *Bruen*, 597 U.S. at 17. If it does, the conduct is presumptively protected. *Id*. at 23-24.

In the second step, to legitimate the regulation of protected conduct, the government must "demonstrat[e] that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. In Carlos' case, this requires the following questions to be answered: (a)

5

during the period leading up to the adoption of the Second Amendment, did our Nation prohibit people from firearm possession based on immigration status? or (b) did it impose analogous restrictions? *Id.* at 26-27. *Rahimi* made it clear that the analogous restrictions need not be a "dead ringer" or a "historical twin." *Rahimi,* 144 S. Ct. at 1898.

### A. Title 18 U.S.C. § 922(g)(5) criminalizes Carlos Serrano-Restrepo's conduct that is protected by the Second Amendment.

The first step in the analysis is determining whether § 922(g)(5)(A)'s restriction of Carlos's possession of firearms is conduct protected by the Second Amendment. Here, the restricted conduct is possessing a firearm. The Second Amendment secures "the right of the people to keep and bear Arms." "To keep and bear" plainly protects the possession of a firearm. *Bruen*, 597 U.S. at 32-33.

Although the Second Amendment clearly protects the possession of a firearm, it protects that action only when undertaken by "the people." Obviously, the plain language of the Second Amendment doesn't limit its protection to citizens. The Supreme Court gave meaning to the phrase "the people" in *Heller* when it stated that:

> "The people" seems to have been a term of art employed in select parts of the Constitution. Its uses suggest that "the people" protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, **refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.**

*Heller*, 128 S. Ct. at 2791 (Emphasis supplied).

For the past sixteen years, Carlos has lived in the United States and his only contact with the criminal justice system is this case. Importantly, during this sixteen year period, Carlos has:

(1) filed an Application of Asylum and Withholding Removal; (2) been informed that he could remain in the United States while this application is pending; (3) been directed to appear at a USCIS office to provide biometrics and honored that appointment; (4) requested an employment authorization; (5) been given a two-year employment authorization; (5) been issued an ITIN; (6) been issued a Social Security Number; (7) formed and operated a successful business; (8) filed personal income tax returns using his ITIN and Social Security Number; (9) filed corporate tax returns on behalf of Valda Services Corporation; (10) been issued an Ohio Driver's license; and (11) purchased real property in the Southern District of Ohio, secured a mortgage in his name, placed his name on the deed, and resided at this property.

The totality of all this conduct demonstrates that Carlos has been part of the national community and developed sufficient connections with the United States to be considered part of its community. Consequently, the Second Amendment protects Carlos Serrano-Restrepo's possession of firearms because he is part of "the people" the Framers of the Constitution sought to protect.

### B. The government cannot show a historical tradition of prohibiting the possession of firearms based on immigration status.

In *Bruen*, the Supreme Court provided guidance for evaluating the historical record: "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Bruen*, 597 U.S. at 34. Similarly, the Court explained that "we must also guard against giving post[-]enactment history more weight than it can rightly bear." *Id.* at 35. The Court expressed skepticism about reliance on laws passed long after the passage of the Constitutional Amendment and explained, "to the extent later history contradicts what the text says, the

7

text controls." *Id.* at 36. Finally, it is incumbent on the government, not the Court, to provide the relevant historical evidence. *Id*. at 25, n.6.

The Second Amendment was adopted in 1791. At that time, aliens weren't prohibited from possessing weapons and for the following century, the United States had no such prohibition because "[t]he Nation's first 100 years was 'a period of unimpeded immigration.'" *Padilla v. Kentucky*, 559 U.S. 356, 360 (2010). Because no one lacked the legal status to immigrate to this country, people in the United States were not denied the right to possess a firearm based on a lack of immigration status.

Consequently, the government cannot establish a historical tradition, particularly from the founding era, of disarming aliens illegally present in the United States. To the contrary, historian Patrick J. Charles, author of numerous books and articles on the Second Amendment's history and current Research Division supervisor for the Air Force Historical Research Agency, has explained that "[f]irearms regulations based on alienage did not become prevalent (and certainly were not widespread) in the statute and ordinance books until the early to mid-twentieth century." Patrick J. Charles, *The Fugazi Second Amendment:* Bruen's *Text, History, and Tradition Problem and How to Fix It*, 71 Cleve. St. L. Rev. 623, 682 (2023).

Possession of a firearm by an illegally present alien did not become a federal crime until 1968. In The Gun Control Act of 1968, "illegal aliens" were barred from possessing firearms and this statute was on the books until 1986, when Congress took steps to simplify § 922 by eliminating the confusion created by conflicting parts of that statute. See 131 Cong. Rec. 16988 (1985) (statement of Sen. Hatch) ("Current law contains two provisions prohibiting certain persons from exercising firearm ownership rights....[The bill] consolidates and reconciles the

conflicting provisions. Seven classes— felons, fugitives, drug abusers, incompetents, illegal aliens, dishonorably discharged, citizenship renouncers—are prohibited from firearm possession, shipment, transportation, or receipt.").

As part of this reform, § 922(g)(5)(A) was enacted as part of the Firearm Owners Protection Act of 1986. Its proposer asserted that its purpose was to "correct demonstrated abuses in present law" by "focus[ing] law enforcement on the kinds of Federal firearms law violations most likely to contribute to violent firearms crime." 131 Cong. Rec. 24 (1985) (statement of Sen. McClure).

Laws enacted in the 20th century, like § 922(g)(5)(A), are much too late under the *Bruen* historical analysis. *Bruen*, 597 U.S. at 66, n.28 (criticizing "respondents' reliance on late-19th-century laws" due to "their temporal distance from the founding" and explaining in a footnote that the Court would "not address any of the 20th-century historical evidence brought to bear by respondents or their *amici*"). From the absence of a historical record of disarmament based on alienage, Patrick Charles concluded that, under the analysis required by *Bruen*, "all firearms regulations based on alienage must be nullified and ruled unconstitutional." *The Fugazi Second Amendment:* Bruen's *Text, History, and Tradition Problem and How to Fix It*, 71 Cleve. St. L. Rev. at 682.

III. **Applicable Cases.**

The first case that must be discussed is *United States v. Rangel-Tapia*, 2024 WL 966385 (6th Cir. Mar. 6, 2024). In that case, Rangel-Tapia was convicted of violating § 922(g)(5) but he didn't contest the constitutionality of the statute in the district court. However, on appeal, Rangel-Tapia advanced an "as applied" Second Amendment challenge. *Id*. at *3. Because this

9

argument was not properly preserved, the Sixth Circuit applied plain error review. The panel did not reach the merits of the Second Amendment challenge; instead, it found that because "no circuit court has declared the statute unconstitutional and no binding law…in our circuit answers the question presented, there can be no plain error." *Id*.

There are two noteworthy district court opinions that have found that § 922(g)(5) violates the Second Amendment. The first is *United States v. Sing-Ledezma*, ---F.Supp.3d---, 2023 WL 8587869 (W.D. TX, Dec. 11, 2023). In her opinion, Judge Cardone found that the Second Amendment covers Sing-Ledezma's possession of a firearm. *Id*. at *6-7. Judge Cardone then marched, in impressive detail, through the historical record and concluded that § 922(g)(5) is not consistent with the Nation's historical record of firearm regulation. *Id*. at *7-17. For sake of brevity, Judge Cardone's research on the historical record is not duplicated herein but is incorporated by reference. The government has appealed this decision to the Fifth Circuit Court of Appeals, but the case has not yet been briefed.

The second case is *United States v. Carbajal-Flores*, ---F.Supp.3d---, 2024 WL 1013975 (N.D. IL Mar. 8, 2024). In this case, Judge Coleman also found that Carbajal-Flores' weapon possession was covered by the plain text of the Second Amendment. *Id*. at *3. As to the second prong of the *Bruen* test, Judge Coleman also found that § 922(g)(5)(a) was not consistent with the Nation's historical record of firearm regulation. *Id*. at *4.

Judge Coleman granted Carbajal-Flores' "as applied" Second Amendment challenge after finding that his "criminal record containing no improper use of a weapon, as well as the non-violent circumstances of his arrest do not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly and should be deprived of his Second

Amendment right to bear arms in self-defense." *Id*. The government has appealed this decision to the Seventh Circuit Court of Appeals, but the case has not been briefed.

## IV. Conclusion.

Carlos Serrano-Restrepo's possession of weapons and ammunition is protected by the Second Amendment and the government cannot meet its burden of establishing that § 922(g)(5)(A) is consistent with the Nation's historical record of firearm regulation. Consequently, § 922(g)(5)(A), as applied to Carlos, violates the Second Amendment and the indictment in this case must be dismissed.

        Respectfully submitted,

        /s/ Steven S. Nolder
        Steven S. Nolder (0037795)
        65 E. State Street, Suite 200
        Columbus, Ohio 43215-3469
        (614) 221-9790
        snolder9@gmail.com
        Attorney for Carlos Serrano-Restrepo

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of this Motion to Dismiss the Indictment was electronically served upon all counsel this 31st day of July, 2024.

        /s/ Steven S. Nolder
        Steven S. Nolder (0037795)
        Attorney for Carlos Serrano-Restrepo