IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : CASE NO. 2:24-CR-107 |
| vs. | : |
| | : JUDGE SARGUS |
| CARLOS SERRANO-RESTREPO, | : |
| Defendant. | : |

**DEFENDANT CARLOS SERRANO-RESTREPO'S
SENTENCING MEMORANDUM**

**I.      INTRODUCTION.**

On March 31, 2025, the United States Probation Office disclosed the final Presentence Investigation Report (hereinafter "PSR"). Under the existing rubric, sentences are imposed after moving through the following three-step process: (1) properly compute the applicable guidelines range; (2) determine the propriety of a departure; and (3) apply the relevant §3553(a) factors. USSG §1B1.1(a)-(c). This procedure yields a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing cabined in 18 U.S.C. §3553(a)(2).

**II.     SENTENCING GUIDELINES.**

The proposed guideline application suggests a sentencing range of 57-71 months imprisonment based on Carlos Serrano-Restrepo's Total Offense Level 25 and Criminal History Category I. (PSR, ¶69). There are no objections to these computations. However, the parties entered into a plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), agreeing to a sentence of probation and the payment of a $100.00 special assessment. This Court is urged to both accept and implement this agreement. (PSR, ¶69).

1

**III.     DEPARTURE.**

There are no identified factors supporting a departure and Carlos agrees with that assessment. (PSR, ¶84).

**IV.     SENTENCING FACTORS—18 U.S.C. § 3553(a).**

The final step of the sentencing analysis requires this Court to determine what sentence is sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate. Carlos Serrano-Restrepo points to the following § 3553(a) factors to answer this statutory question: (1) the nature and circumstances of his offense and (2) his history and characteristics.

Carlos submits that a sentence requiring him to complete a five-year term of probation and pay a $100.00 special assessment vindicates Congress' sentencing mandate as it reflects the seriousness of his offense, provides just punishment, and protects the public.

**A.     NATURE AND CIRCUMSTANCES OF THE OFFENSE—§ 3553(a)(1).**

This is a serious offense based on Carlos' false statements made about his citizenship to acquire 173 guns as well as the number of weapons he procured. However, unlike the mine-run case [a mine-run case "is a normal case under the governing Guidelines range[.]" *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020)], most of Carlos' weapons were never fired. Instead, they were responsibly stored in a locked closet, a gun safe, or displayed in Carlos' home. They were also labeled and tagged in a museum-like order. (PSR, ¶¶18 & 51). Carlos didn't use any of the firearms to commit any crimes and all the firearms he purchased were recovered. (PSR, ¶18).

As part of the plea agreement, Carlos agreed to forfeit all 173 firearms. (PSR, ¶17). Although the precise amount he spent is not known, Carlos estimates he spent between $250,000

and $300,000 on these weapons. The funds used to make the purchases were legitimately earned and Carlos would like this Court to consider this expenditure, when deciding whether a fine is appropriate.

### B. CARLOS SERRANO-RESTREPO'S HISTORY AND CHARACTERISTICS—§ 3553(a)(1).

Carlos Serrano-Restrepo is the middle child born to loving parents, Pedro Serrano and Maria Restrepo in Medellin, Colombia. (PSR, ¶42). Pedro was a taxi driver while Maria was a childcare worker. (PSR, ¶42). No form of abuse ever darkened Carlos' doorstep, his parents showered Carlos and his siblings with love, and all his basic needs were met. (PSR, ¶43).

Among the many tenets emphasized in the home, Carlos' parents stressed a strong work ethic, academics and the teachings of the Catholic church. (PSR, ¶43). When he got older, it's obvious that Carlos took these lessons to heart. At the age of 15, Carlos began working at a pizza shop in Medellin to help cover some of his family's recurring bills. (PSR, ¶44). Carlos attended and graduated from military school in Colombia which substituted for that country's mandatory military service obligation. (PSR, ¶56). Two years of electronics education followed Carlos' graduation. (PSR, ¶56).

Sometime in 1997, Carlos' parents divorced because his mother wanted to immigrate to the United States while his father wanted to remain in Colombia. (PSR, ¶43). With his mother living in the United States, on April 17, 2008, Carlos unlawfully entered the United States and has never left. (PSR, ¶10). Carlos has a close relationship with his mother and siblings (PSR, ¶50) while his father died in Colombia more than a decade ago from hepatic cirrhosis of the liver. (PSR, ¶42).

On July 8, 2022, Carlos filed an asylum application, which is pending. The reason Carlos is seeking asylum is he's wanted by a Colombian gang, and fears if he returns, his life would be in


danger. (PSR, ¶¶10 & 50).

Four years ago, Carlos was introduced to Lucia Pulido, and she's become his best friend, confidante and remains supportive of him. (PSR, ¶¶46 & 51). Ms. Pulido provided Officer Clark a window into Carlos' soul by describing him in the following way: "noble, hardworking, shy, loving, and helpful." (PSR, ¶49). Lucia also informed Officer Clark about Carlos' habit of collecting objects, including elephant figurines and liquor bottles. (PSR, ¶51). In her judgment, Carlos's acquisition of firearms and how he kept and displayed them was consistent with his tendencies to collect objects. (PSR, ¶51).

After entering the United States in 2008, Carlos settled in Newnan, Georgia where he worked as a residential carpenter. (PSR, ¶60). Carlos then lived in the Metro-New York City area for a decade where he worked several menial jobs enabling him to survive. (PSR, ¶59).

In 2017, Carlos and another business partner started Valda Services Corporation and the business' focus was remediating fire and flood damage to residences. (PSR, ¶57). After a couple of years, the company relocated to Arizona and after Carlos bought his partner out, the business was moved to Columbus, where it is currently domiciled. (PSR, ¶57).

Before Carlos was indicted, a significant percentage of Valda's revenue came from contracts with Serv Pro which was responsible for about 100 job assignments per month. Post-indictment, Serv Pro no longer wants to do business with Carlos. (PSR, ¶44). Lucia has taken over the day-to-day operations at Valda and Carlos is helping her learn the business. (PSR, ¶44). With Lucia at the helm, Valda has several contracts with two of Serv Pro's competitors but there have been fewer than five assignments per month. Because of Valda's schism with Serv Pro, Valda's business income as well as Carlos' taxable income are a fraction of what they once were. (PSR, ¶58).

## V. CONCLUSION.

After considering the relevant § 3553(a) factors, Carlos Serrano-Restrepo, through undersigned counsel, hereby moves this Court to accept the Rule 11(c)(1)(C) plea agreement and sentence him to complete five years of probation and pay a $100.00 special assessment. This sentence would be sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate.

<div style="text-align:right">

Respectfully submitted,

/s/ Steven S. Nolder
Steven S. Nolder (0037795)
65 E. State St., Ste. 200
Columbus, Ohio 43215-3469
(614) 221-9790
snolder9@gmail.com
Attorney for Carlos Serrano-Restrepo

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this Sentencing Memorandum was electronically served upon AUSAs Elizabeth Geraghty and Heidy Carr this 5th day of May, 2025.

<div style="text-align:right">

/s/ Steven S. Nolder
Steven S. Nolder (0037795)
Attorney for Carlos Serrano-Restrepo

</div>